## Leech's Estate.

*Wills—Construction—Gifts over to persons entitled under "then existing" intestate laws.*

Testator bequeathed his residuary estate to his executors in trust to pay the income to his wife for life, with remainder to his three children for their lives and to their issue, and as to the further devolution provided as follows: "After these trusts have been fully executed, then the said property shall descend and go as my estate according to the then existing laws of Pennsylvania. Provided, however, that if either of my sons should die leaving a widow, I direct the said trustees to pay to such widow during her life, if she shall so long remain my son's widow, such part of the income of my estate which would have been coming to such son, as he may by any last will and testament in writing direct and appoint." The widow was survived by testator's three children, all of whom died without issue living at the period of distribution: *Held,* that the direction that the property should "descend and go as my estate according to the then existing laws of Pennsylvania" indicated that those who were entitled thereunder were testator's next of kin at the period of distribution rather than at his death; and this indication was further strengthened by the language of the proviso; and that, therefore, his nephews and nieces were entitled to the fund, and not the administrators of his deceased children.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1879, No. 448.

*Porter, Foulkrod & McCullagh,* for the estates of the widow and of the children of the testator, exceptants.

*Bell, Kendrick, Trinkle & Deeter* and *Joseph D. Redding,* for Jameson Cotting, administrator, exceptant.

*Francis Shunk Brown, Jr., Gunnison, Fish, Gifford & Chapin* and *Brown & Williams,* for nephews and nieces of testator, contra.

GEST, J., Feb. 3, 1922.—The testator died on Oct. 29, 1869, leaving a will dated Nov. 25, 1867, and a codicil dated June 26, 1869, by which he devised
1 D. & C.

and bequeathed his residuary estate as a whole to his executors in trust to pay the income, one-third to his wife for life or widowhood and the remainder to his three children for their respective lives and to their issue, free of their debts, and then provided, in the paragraph of his will which must now be construed: "After these trusts have been fully executed, then the said property shall descend and go as my estate according to the then existing laws of Pennsylvania. Provided, however, that if either of my sons should die leaving a widow, I direct the said trustees to pay to such widow during life, if she shall so long remain my son's widow, such part of the income of my estate which would have been coming to such son, as he may by any last will and testament in writing direct and appoint."

The widow died in 1910, and of the three children Henry died in 1890, leaving issue a daughter, Marie Cotting, who died in 1900, without issue; David died in March, 1921, without issue, and Josephine died in August, 1921, also without issue, being the last survivor, so that, after the lapse of fifty-two years, the trusts established by the will have been fully executed, and the principal or *corpus* of the estate is to be distributed. The question for this court to decide is whether it should descend and go as the testator's estate, (1) to the personal representatives of the three deceased children, perhaps including the estate of the deceased widow, the distribution being, on this theory, made as of the date of the testator's death; or (2) to the children of the deceased brothers and sister of the testator, who, there being now no lineal descendants, would be entitled as collateral heirs or next of kin of the testator, the distribution on this theory being made as of the date of the death of the testator's last surviving child. The auditing judge, in a well considered adjudication, adopted the latter construction of the will, and we concur in his opinion.

It cannot be disputed that, as a general rule of construction, a testator who makes a gift in remainder to heirs, or next of kin, or to the persons who would take under the intestate laws, or gives the estate in accordance with the law, or the like, will be understood to intend those persons who would have so taken at the time of his death and not at the time appointed for their taking. This is not a mere arbitrary rule, but is founded upon common sense, for a testator, in making such a provision, is, naturally enough, contemplating his own death as the period when the objects of his bounty should be ascertained; and, moreover, the persons thus entitled under the intestate laws have a statutory right, which should prevail unless it appears that the testator intended that others should take, and this contrary intention must, as the decisions show, be clear and convincing.

But, after all, the question is what did the testator mean by the words which he has used, and in this will the crucial words are contained in three lines—"after these trusts have been fully executed, *then* the said property shall descend and go as my estate according to the *then* existing laws of Pennsylvania." The word "then" may have either of two meanings; it may mean "in that event" or "at that time." If this testator had merely said "then the said property shall descend and go as my estate according to the laws of Pennsylvania," we might be disposed to hold, under some of the decisions cited to us, that the word "then" was used simply to denote a transition in thought and not in its temporal sense; but where the testator adds "according to the *then* existing laws of Pennsylvania," it is impossible for us to doubt that he intended to refer to the time of distribution, "after these trusts have been fully executed." It was, indeed, ingeniously argued by counsel for the exceptants that the testator did not intend by these words to

limit or define the class of persons who should take, but merely that the distribution or apportionment of the estate among that class of persons should be made in accordance with the "then existing laws." We disagree with this construction. The provision that "the property shall descend and go as my estate according to the then existing laws" must refer to the persons who should be entitled to take under the then existing laws, as well as to the interests which they should be entitled to take. "The then existing laws" provide for both, and the two matters cannot be separated. We have then, it seems to us, a clear and unequivocal expression of intention by the testator that, when the trusts of the will should have been fulfilled, his estate should go to the persons who would be entitled as his next of kin at that time; and this construction is supported, if it needs support, by what follows: "Provided, however, that if either of my sons should die leaving a widow, I direct the said trustees to pay to such widow during life, if she shall so long remain my son's widow, such part of the income of my estate which would have been coming to such son as he may by any last will and testament in writing direct and appoint." If the testator intended—and the argument of the exceptants must go to that length—that his children should take vested interests in the principal of the estate at the testator's death, what object could he have had in thus providing this power of appointment as to their income? The answer made at the argument was that this was to enable a son at his death, pending the trust, to provide, as Henry S. Leech did, for his widow until its termination. This is true enough as far as it goes, but the answer is not complete, for this power of appointment relating to income is found as a proviso in that concluding part of the will which disposes of the principal, and this does not seem consistent with the theory that Henry had an absolute estate in one-third (or perhaps two-ninths) of the principal of the estate in which his widow would be entitled to share, whether he left a will or not. Placed where it is, it indicates a limitation of his right of testamentary disposition.

We have not thought it necessary to extend this opinion by any reference to the decisions which were discussed in the elaborate argument of this case, and shall only briefly refer to other questions that were debated. Thus, it was argued that the word "descend" is inapplicable to a gift to collaterals; but this objection has been well answered by the auditing judge, who notices that the phrase used is not merely "descend," but also "descend and go as my estate." The provision as to the advancements authorized for his children, in the fifth paragraph of the will, is also explained by the auditing judge in his adjudication, in addition to which it may be considered in connection with the subsequent clause exempting their income from debts, etc., or from assignment or anticipation. That is, the testator may have intended that, notwithstanding the provision against assignment or anticipation of the income, the trustees might, in the exercise of a cautiously guarded discretion, make "advances" therefrom to his sons to enable them to go into business, and might buy a residence for his daughter. Much stress also was laid in the argument upon this provision in the will, that these advances for the sons or expenditures for the daughter should be deducted from their respective shares "which I am about to set apart for their benefit," which, it was argued, indicated that the children were given shares of the *corpus* from which these advances should be deducted. It is perhaps a sufficient answer that, even if the testator stated that he was about to set apart such shares, he did not in fact do so, but, on the contrary, showed clearly that he intended the whole estate to be kept as a "unitary fund," and gave only the income thereof to his

1 D. & C.

wife and children, the word "share" being used by a not infrequent mental process, where no share is actually given, as in Metz's Estate, 20 Dist. R. 652. But, besides that, the probable explanation is that the testator not unnaturally supposed, as most testators do, that, in the ordinary course of events, his wife would die first, then all his children in turn, and that his children would leave issue surviving them and living at the period of distribution, in which case his estate would "descend and go according to the then existing laws" to such issue, their shares being charged with the advances made to their parents, which would be natural and proper in order to effect equality among them. The language used by the testator does not show his intention that his children should take, but merely indicates his expectation that they would. But, as the event turned out, there are no lineal descendants, so that the estate must go to collaterals under the intestate laws. Indeed, on the theory of the exceptants, if Mrs. Cotting, the only issue of the three children, were living now, she could not take, as the estate would be distributed as of the testator's death.

We are, therefore, of opinion that the exceptions filed in behalf of the estate of the deceased widow and the estates of the three deceased children should be dismissed, and it is not necessary to consider whether, if we adopted a different construction of the will, the estate of the deceased widow should be excluded, the gift to her of income being "in lieu or bar of dower or thirds at law." We observe, however, that the exceptions are filed jointly for the estates of widow and children, and, moreover, fail to set forth the awards that the auditing judge should have made. As we pointed out in Farrell's Estate, No. 351 of January Term, 1919 [1 D. & C. 128], exceptions to an adjudication should set forth clearly not merely the alleged error of the auditing judge in making his award, but also his alleged error in not making the awards that the exceptant claims he should have made, i. e., that the auditing judge, to use familiar phraseology, has not only done those things which he ought not to have done, but has left undone those things which he ought to have done. Even if we agreed with the argument of the exceptants, the record would be imperfect as it stands.

Exceptions were also filed *nunc pro tunc* in behalf of Jameson Cotting, husband and administrator of Marie Cotting, deceased, claiming that he is entitled to one-third of the principal. It was argued that if she were still living, she would be entitled to this share as the sole surviving lineal descendant of her deceased father, Henry, because her interest depended upon her surviving him, and became vested on such survivorship, payable, however, at the termination of the trust. We can discover nothing whatever in the will to support this theory of construction. All that is given her is the right to receive the income previously given to her father (subject to his testamentary appointment in favor of his widow), and this she received while she lived, and, after her death, her administrator received it, under the prior decision in Leech's Estate, 228 Pa. 311, so that it does not seem necessary to elaborate this feature of the case.

All of the exceptions are dismissed, and the adjudication is confirmed absolutely.